## Case No. 317.

## AMERICAN SHOE-TIP CO. v. NATIONAL SHOE-TOE PROTECTOR CO.

[2 Ban. & A. 551;[1] 11 O. G. 740.]

Circuit Court, D. New Jersey. March 27, 1877.

PATENTS FOR INVENTIONS—ACTION FOR INFRINGEMENT—INJUNCTION — REASONABLE DOUBT AS TO VALIDITY—PRIORITY—REISSUE—DISCLAIMER.

1. Where an application for a preliminary injunction is founded upon long public acquiescence in the complainant's patent, and on adjudications in other courts in favor of its validity, the existence of these facts is, prima facie, a sufficient reason for the court to grant an injunction pending the litigation, only in those cases where the infringement is palpable.

2. But, if any reasonable doubt exists as to the validity of the patent, and where the defendant is acting under the authority of another patent, the court should not grant an injunction until after the examination and decision in regard to the claims of the conflicting patents, upon the merits of the case.
[See Crowell v. Harlow, Case No. 3,444; Burleigh Rock-Drill Co. v. Lobdell, Id. 2,166.]

3. Priority having been declared in favor of the invention described and claimed in the complainant's patent, in an interference proceeding

¹[Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

with the inventor of the invention described and claimed in the patent under which the defendants act: *Held*, that after long public acquiescence as was shown in this case, it is too late to open the inquiry as to priority on a motion for a preliminary injunction.

4. A patent may be reissued so as to include features of the invention disclaimed in the original, where the disclaimer was the result of an error or mistake on the part of the patent office.'
[See Poppenhusen v. Falke, Case No. 11,279.]

[In equity. Bill by the American Shoe-Tip Company against the National Shoe-Toe Protector Company for infringement of patent No. 26,329. Heard on motion for preliminary injunction. Motion granted.]

Dickerson & Beaman, for complainant.
George Harding, for defendants.

NIXON, District Judge. The application in this case is for a preliminary injunction; and it is founded upon long public acquiescence in the complainant's patent, and on adjudication in other courts in favor of its validity. The existence of these facts is, prima facie, a sufficient reason for the court to interfere, by the injunction, pending the litigation, only in those cases where the infringement is palpable. If any reasonable doubt exists upon that point, and especially if the defendant is acting under the authority of a patent, there should be no interference by the court until after the examination and decision in regard to the claims of the conflicting patents, upon the merits of the case.

Much controversy was had on the argument concerning the scope of the invention owned by the complainant. The original patent, No. 26,329, was for a new article of manufacture, and was granted to James M. Allen, the assignee of Newman Silverthorn, the inventor, on the 29th of November, 1859, for an "improved boot and shoe tip." In the specification and claims it was limited to a shoe-tip made of manufactured rubber or gutta-percha. The inventor expressly disclaims leather tips or metallic tips, and he enters into a long argument to show why the rubber tips are different, and how they are superior. "I am aware," he says, "that the leather tips have been known and used for a long time; and that metallic tips have been made and patented. I lay no claim to either of these things. I make a tip that is more ornamental than the leather, which it resembles very much, and much more durable than leather. Both the leather and the metal are difficult to crimp, fashion, or form, so as to make a neat covering for the toe of the shoe. But the prepared rubber may be moulded, fashioned or formed with great care and perfection, and with a finish equal to the best patent leather. So also may the gutta-percha be moulded into form, the nature of the materials of which my tips are composed being such that it can be readily put into any form or shape, and retain its enduring properties, while they admit of a high degree of

polish, that adds greater market value to the shoe than the leather or metal tips do. 'Patent leather,' as it is termed, is exceedingly difficult to crimp or tree into shape for a boot or shoe tip; but a prepared rubber or gutta-percha tip can be moulded or formed into the required shape with the greatest facility, and finished to bear the greatest resemblance to patent leather, while it is much cheaper, more endurable, and much more readily secured to the boot or shoe— thus, in every essential making a better article than either the leather or metal tips heretofore used." The complainants insist, that notwithstanding this broad disclaimer of leather and metal tips, the invention of Silverthorn, in fact, covers them, and that the disclaimer was the result of a mistake or error in the officers of the patent office, which was subsequently corrected.

It appears from a record submitted on the argument, that on the 16th of May, 1856, Silverthorn filed a caveat in the confidential archives of the office, claiming that he had "made certain improvements in the mode of constructing boots and shoes," and was then "engaged in making experiments for the perfecting the same, preparatory to his applying for letters patent therefor." He therein describes the nature of his invention to consist —"In providing the upper on the toes of boots and shoes with fenders of copper, brass, india-rubber, gutta-percha, or any other substance, for the purpose of protecting against grasses, etc., cutting or wearing out the uppers on the toes of boots and shoes, which fender is required to be made so as to fit upon the toe, previous to putting on the outsole, and to extend beneath the outsole far enough to receive the pegs, which are to fasten it on, etc." He claimed as his invention: "The application to the toe of boots and shoes, in the manner" therein "described, of any substance that would protect the upper from being cut or worn out by the long grasses, etc., as herein described."

With this caveat pending, on the 16th of December following, one George A. Mitchell filed an application for letters patent for a metallic tip. After describing the mode of making and attaching it to the boot and shoe, he claimed as his invention: "The application of a thin plate to the toes of children's, boys', and men's boots and shoes, so as to prevent them from wearing out; using for that purpose the aforesaid metal. or compounds, or any other, substantially the same, which will produce the intended effect."

An interference being declared between them, a large amount of testimony was taken, and the commissioner of patents, on the 6th of November, 1857, decided in favor of the priority of the Mitchell invention, and granted to him letters patent for the same. Silverthorn then withdrew his application, with the condition, however, annexed, that he should not be debarred at any future time from testing the validity of the

patent granted to Mitchell. On the 7th of December, 1858, Mitchell, having surrendered his patent, obtained a reissue with an additional claim for the metallic tip, described in his specification as a "new article of manufacture." On the 13th of July, 1859, the application of Silverthorn was renewed, limiting the claim to a shoe-tip of india-rubber or gutta-percha, disclaiming the metallic tip; and the above-recited letters patent No. 26,329, dated November 29th, 1859, were issued to James M. Allen, his assignee. On the 12th of December, 1860, Mitchell surrendered his reissue patent, and applied for a reissue thereof under the broad claim for a protecting tip of any materials for the toes of boots and shoes. The commissioner allowed the claim, and ordered the reissue, but, before it was taken from the patent. office, Silverthorn's assignee surrendered his patent, and on the 14th of February, 1861, applied for a reissue, with a claim as broad as Mitchell's, and in direct conflict therewith.

An interference being again declared, the controversy between the applicants went from the examiners to the commissioner, who again decided in favor of Mitchell. The assignee of Silverthorn appealed to the supreme court of the District of Columbia. [Silverthorn's Assignee v. Mitchell, Case No. 12,859.] The court, on the 4th of August, 1862, by Chief Justice Dunlop, reversed the decision of the commissioner of patents, and held (1) that the two surrenders and applications for reissues opened the claims of both parties for re-examination, as if they had been original applicants, and enabled the former errors in the patent to be corrected; (2) that Silverthorn was the original and first inventor of the invention claimed; (3) that the design of congress in authorizing a reissue was to confer on inventors the full benefit and extent of their whole invention; and (4) that the assignee of Silverthorn should have reissued to him the letters patent for the shoe-tip, as claimed.

A reissue was accordingly made on the 2d of September, 1862, to George Goodyear, who has become the assignee of Allen in letters patent No. 1,339, which, being assigned to the complainant corporation, was again surrendered and reissued August 4, 1868, by letters patent No. 3,070. The patent expiring November 29, 1873, the commissioner extended the same, and the suit is brought on these extended letters patent. Having described the invention, in the specification of the last reissued patent, it is stated: "That the claim of the invention is not confined to the particular material of which the tip is or may be made; nor yet to the manner or process by which the same is or may be produced or applied, but what is claimed as the invention of the said Newman Silverthorn is, a formed tip, substantially as described, as an article of manufacture."

The controversy between Silverthorn and

Mitchell as to the priority of the invention of the boot-tip generally, as an article of manufacture, closed more than fourteen years ago, and, so far as the knowledge of the court extends, the public has generally acquiesced in the decision in favor of Silverthorn. It is too late to open the inquiry on a motion for a preliminary injunction, and if the shoe-tip, as an article of manufacture, which the defendants acknowledge to have made and sold, infringes the claim of the Silverthorn patent, a prima facie case is revealed that warrants and demands the interference of the court until the final hearing.

The defendants frankly produce the article of which complaint is made, and describe the process of manufacturing it.

It is a very ingenious and useful contrivance, and it has some features, I am inclined to believe, which render it more valuable than the complainant's device. But it is a formed shoe-tip, nevertheless, and is an article of manufacture made and sold separate from the shoe. It is a toe-protector, and although it does not cover the upper leather of the boot, it is inverted and fastened around the toe, substantially as the complainant's tip, and performs the same useful functions of protecting it against wear. I do not see how it can be used without infringing the central idea of the complainant's patent, to wit, the protection of the toe of the boot or shoe; and although it may be an improvement, it is nevertheless an infringement; and an injunction must be ordered to restrain the defendants until the further order of the court, and it is ordered accordingly.

[NOTE. So far as ascertained, this patent has not been involved in any other reported cases prior to 1880.]